UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA RAMONA THOMPSON, | No. 2:12-cv-1850 AC |
| Plaintiff, | |
| v. | ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

    Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"). The parties' cross-motions for summary judgment are pending. For the reasons discussed below, the court will grant in part plaintiff's motion for summary judgment and will deny the Commissioner's cross-motion for summary judgment.

PROCEDURAL BACKGROUND

    Plaintiff filed an application for DBI on April 11, 2005, alleging disability beginning on February 4, 2004. Administrative Record ("AR") 74-79. Plaintiff's application was denied initially and again upon reconsideration. AR 31-36, 40-44. On September 4, 2007, a hearing was held before administrative law judge ("ALJ") Charles D. Reite, who thereafter issued an

1

unfavorable decision. AR 455-65. The Appeals Council granted plaintiff's request for review of this decision and remanded the matter on May 25, 2010 for further consideration. AR 466-69. On September 22, 2010, a rehearing was held before a different ALJ, K. Kwon. AR 654-703. On December 20, 2010, ALJ Kwon also issued an unfavorable decision, finding as follows (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2009.
>
> 2. The claimant did not engage in substantial gainful activity (SGA) during the period from her alleged onset date of February 4, 2004 through her last date insured (DLI) of September 30, 2009.
>
> 3. Through the date last insured, the claimant had the following severe impairments: depression, plantar fasciitis; and pelvic impairment with pelvic pain of unknown etiology.
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1576(b) except with the ability to do simple, routine unskilled light work with a sit/stand option.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work.
>
> 7. The claimant was born on August 27, 1965 and was 44 years old, which is defined as a younger individual 18-49, on the date last insured.
>
> 8. The claimant has at least a high school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from February 4, 2004, the alleged onset date, through September 30, 2009, the date last insured.

AR 15-28.

Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Council denied review on May 15, 2012, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 10-12.

## FACTUAL BACKGROUND

Born on August 27, 1965, AR 74, plaintiff was 38 years old on the alleged onset date of disability and 45 years old at the time of the second administrative hearing.  Plaintiff has a high school education, AR 660, and last worked at Costco for 14 years as a returns processor, a cashier, and in marketing promotions.  AR 661-62.  Plaintiff was on part-time status at Costco since 2000.  AR 661.

## LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973 (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive.  See Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "It means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice."  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec' y of Health and Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988); see also Jones v. Heckler, 760 F.2d 993, 995 (9th

1  Cir. 1985).

2  "The ALJ is responsible for determining credibility, resolving conflicts in medical
3  testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001)
4  (citations omitted). "Where the evidence is susceptible to more than one rational interpretation,
5  one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v.
6  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons
7  stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not
8  rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d
9  871, 874 (9th Cir. 2003).

10  The court will not reverse the Commissioner's decision if it is based on harmless error,
11  which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the
12  ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.
13  2006) (quoting Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v.
14  Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

15  ANALYSIS

16  Plaintiff seeks summary judgment on the grounds that: (1) the ALJ's assessment of
17  residual functional capacity ("RFC") is not supported by substantial evidence, (2) the ALJ failed
18  to properly consider the opinions of plaintiff's treating gynecologists, (3) the ALJ improperly
19  found plaintiff to be not fully credible, and (4) the ALJ failed to consider plaintiff's sleep
20  disturbances when finding that she could perform light work. The Commissioner, in turn, argues
21  that the ALJ's decision is supported by substantial evidence and is free from legal error.

22  A.  Plaintiff's RFC and Her Ability to Interact with the Public

23  The ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light
24  work except with the ability to do simple, routine unskilled light work with a sit/stand option. At
25  the September 22, 2010 rehearing, vocational expert Michael Stinson was asked what jobs
26  plaintiff could perform with this RFC, to which Mr. Stinson responded that plaintiff could work
27  as a ticket seller / cashier. AR 698. Plaintiff contends the ALJ committed error in failing to
28  consider the May 16, 2005 opinion of a consultative examiner, Dr. David E. Gross, who opined

4

that plaintiff did not have an adequate capacity for dealing with the public. See AR 399-401. Since working as a ticket seller necessarily implies work with the public, plaintiff argues that giving Dr. Gross's opinion proper weight would have resulted in a finding of disability.

Assuming arguendo the ALJ erred in failing to consider or credit Dr. Gross's opinion, the court finds any such error to be harmless. To determine whether an error is harmless, a court looks to whether the mistake was non-prejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006). In this case, plaintiff contends that crediting Dr. Gross's opinion would have resulted in a disability finding because the job identified by the vocational expert required public contact, which Dr. Gross explicitly stated would be difficult for plaintiff. But the vocational expert also identified a number of other jobs at a sedentary level that plaintiff could perform, including document preparer, which does not require significant public contact. See AR 699; 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(c) (defining residual functional capacity as the "*maximum* degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs.") (emphasis added).

B.   The Opinions of a Treating and an Attending Gynecologist

Plaintiff next argues that the ALJ erred in her treatment of the opinions of treating gynecologists, Dr. Susana Gonzalez and Dr. Jose Baldonado.

1.   Legal Standards

Three types of physicians may offer opinions in social security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinion of a treating doctor is accorded more weight than the opinion of a doctor who did not treat the claimant, and the opinion of an examining doctor is, in turn, entitled to greater weight than the opinion of a nonexamining doctor. Id. (citations omitted); 20 C.F.R. § 404.1527(c)(1)-(2).

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

opinion of a treating or examining physician. Lester, 81 F.3d at 830 (citing Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)). If contradicted by another doctor, the opinion of a treating or examining physician can be rejected only for "specific and legitimate reasons" that are supported by substantial evidence in the record. Id. at 830-31 (citation and internal quotation marks omitted). An ALJ, however, "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957.

2. Opinion of Dr. Susana Gonzalez

On April 15, 2009, treating gynecologist Dr. Susana Gonzalez, of the Napa Valley Women's Healthcare, completed an Attending Physician's Statement of Functionality for Hartford Life Insurance Company.[1] AR 579-60. Dr. Gonzalez diagnosed plaintiff with chronic pelvic pain and a secondary diagnosis of pelvic inflammatory disease. She noted that plaintiff's subjective symptoms were pelvic discomfort causing pain and inability to function, and plaintiff was noted to be taking Ibuprofen and a narcotic, Darvocet, for pain. Dr. Gonzalez determined that plaintiff can sit for 2 hours at a time per day, stand for 1 hour at a time per day, and walk for a ½ hour at a time per day. She also determined that plaintiff could never lift / carry more than 20 pounds and could occasionally lift / carry less than 20 pounds. Lastly, Dr. Gonzales determined that plaintiff could occasionally bend, kneel / crouch, drive, reach and finger / handle.

The ALJ gave this opinion "some weight," but failed to provide any reasons for this decision. Although the Commissioner argues that giving the opinion reduced weight was appropriate in light of plaintiff's testimony that she took only Ibuprofen for pain and not Darvocet, this reason was not identified by the ALJ, and post-hoc rationalizations do not provide a basis for the court to uphold the ALJ's decision. See Hassen v. Comm'r, 421 F. App'x 738, 739

---

[1] The record establishes that Dr. Gonzalez examined plaintiff on April 15, 2009, for complaints of pain in the lower abdomen, which plaintiff rated as a 7 on a scale of 1-10. AR 545-46. Plaintiff reported that she is unable to function without narcotics (Darvocet), and Dr. Gonzalez noted that plaintiff is disabled secondary to her narcotic use. On November 18, 2005, Dr. Gonzalez performed a laparoscopy with a left ovarian cystectomy, procedures performed to address plaintiff's chronic pelvic pain and a left ovarian cyst. AR 556-59.

(9th Cir. 2011) ("Although the record provides reasons to discount Mackey's testimony, [the court] cannot provide post-hoc rationalizations for the ALJ's decision."). Furthermore, that the ALJ also gave reduced weight to other physician opinions is an insufficient basis to justify giving reduced weight to the opinion of a treating physician. Accordingly, the court finds that the ALJ has not sufficiently set forth specific reasons for discrediting Dr. Gonzalez's opinion based on substantial evidence in the record.

Moreover, it would be clearly inappropriate for the undersigned to construe the ALJ's failure to forward reasons for rejecting Dr. Gonzales's opinion as harmless error, as it is the ALJ's burden, and not the court's, to provide specific and legitimate reasons for rejecting a treating physician's medical opinion. The courts are constrained to review the reasons actually asserted by the ALJ, and may not undertake to identify additional reasons that could have been advanced by the ALJ, but were not. See Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir. 2006). Furthermore, the courts may not affirm the Commissioner's decision on grounds the Commissioner failed to invoke in making his decision. See id. (quoting Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001)). Under such circumstances, applicable Ninth Circuit jurisprudence clearly establishes that it would be reversible error to invoke the harmless error doctrine. See id. at 1056-57.

### 3. Opinion of Dr. Jose Baldonado

In December 2001, Dr. Jose Baldonado, another gynecologist, completed a physician's statement referencing plaintiff's diagnosis from another doctor of adenomyosis possibly resulting in pelvic pain.[2] AR 332-33. Dr. Baldonado's statement indicates that plaintiff had been seen or treated 17 times since October 2000 and had surgical removal of her left fallopian tube in December 2000.[3] As a result of the adenomyosis and pelvic pain, Dr. Baldonado opined that

---

[2] Adenomysos occurs when endometrial tissue, which normally lines the uterus, exists within and grows into the muscular wall of the uterus. See Mayo Clinic: Diseases and Conditions, Adenomyosis, http://www.mayoclinic.org/diseases-conditions/adenomyosis/basics/definition/con-20024740.

[3] The record is unclear as to whether Dr. Baldonado was a treating or examining physician, though the Commissioner, by citing to case law addressing a treating physician's opinion, appears to concede that this was a treating physician. See Def.'s Cross-Mot. Summ. J. at 8.

1  plaintiff could stand for no more than four hours a day, walk for no more than one hour a day, lift

2  no more than 20 pounds, and is entirely unable to push or pull.  Dr. Baldonado determined that

3  plaintiff's occupational functioning was therefore moderately impaired.

4  Other than mentioning this opinion, the ALJ does not identify what weight she gave to it

5  or why.  Again, the Commissioner attempts to remedy this error by providing its own reasons,

6  including that Dr. Baldonado's diagnosis was based on the diagnosis of another doctor and that

7  the opinion is not supported by any clinical findings.  Neither of these reasons, however, was

8  provided by the ALJ.  Hassen, 421 F. App'x at 739.

9  C.     Credibility Determination

10           1.   Legal Standards

11  An ALJ's assessment of pain severity and claimant credibility is entitled to "great

12  weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d

13  528, 531 (9th Cir. 1986).  When, as here, an ALJ's disbelief of a claimant's testimony is a critical

14  factor in a decision to deny benefits, the ALJ must make explicit credibility findings.  Rashad v.

15  Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

16  1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that

17  claimant was not credible is insufficient).

18  Under the "Cotton test," where the claimant has produced objective medical evidence of

19  an impairment which could reasonably be expected to produce some degree of pain and/or other

20  symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may

21  reject the claimant's testimony regarding the severity of the claimant's pain and/or other

22  symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing

23  so.  See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80

24  F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v.

25  Sullivan, 947 F.2d 341, 343 (9th Cir.1991).  In other words, an ALJ may reject a claimant's

26  testimony only upon "(1) finding evidence of malingering, or (2) expressing clear and convincing

27  reasons for doing so."  Benton ex. el. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).

28  To determine whether a claimant's testimony regarding the severity of her symptoms is

credible, the ALJ may consider, among other things: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284. Social Security Ruling 96–7p further provides that an individual may be less credible for failing to follow prescribed treatment without cause. Soc. Sec. Ruling 96-7p.

    2. Analysis

In assessing plaintiff's credibility, the ALJ found that the record established inconsistent statements by plaintiff regarding the reason she stopped working:

> The claimant was not fired for excessive absences, as alleged at the prior hearing on September 4, 2007 before ALJ Reite and as reported to the internal medicine CE on May 28, 2005, but rather she was fired after admitting fraud / theft in the course of her employment. This erodes her credibility.

AR 241 (citations omitted).

It is well settled that an ALJ may employ "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness and inconsistent statements on various matters. See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). It follows that the ALJ may permissibly infer from plaintiff's inconsistent statements about her work history that plaintiff is not fully credible about other issues, such as her subjective symptoms. See Tommasetti, 533 F.3d at 1040 (plaintiff's inconsistent testimony regarding the reason he stopped working undermined his credibility); Courser v. Astrue, 2012 WL 195519, at *5 (D. Or. 2012) (same).

Here, the evidence establishes that plaintiff was fired from her position at Costco because she returned too many items. See AR 91, 666. Plaintiff, though, made other inconsistent claims regarding the reason she was terminated. See, e.g., AR 403 (in May 2005, plaintiff told Dr. Jenna Beech that she was fired because she called in sick frequently); AR 447 (in January 2007,

9

1  plaintiff told an examining physician that she was fired from her job because she called in sick a

2  lot); AR 426 (in February 2007, plaintiff told an examining psychiatrist that she left her job due to

3  chronic pelvic pain).  Although plaintiff is correct that she did not tell the first ALJ that she was

4  fired for excessive absences, the court nonetheless finds no error in the ALJ's credibility

5  determination since plaintiff did make these other inconsistent statements.

6  D.    Plaintiff's Sleep Disturbances

7       Lastly, plaintiff argues that the ALJ did not assess her sleep disturbances when finding

8  that she could perform light work.  The Commissioner does not address this argument in its cross-

9  motion for summary judgment.

10       Generally, a residual functional capacity ("RFC") is an assessment of an individual's

11  ability to do sustained work-related physical and mental activities in a work setting on a regular

12  and continuing basis of eight hours a day, for five days a week, or equivalent work schedule.

13  SSR 96–8p.  The RFC assessment considers only functional limitations and restrictions which

14  result from an individual's medically determinable impairment or combination of impairments.

15  SSR 96–8p.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the

16  record including, inter alia, medical records, lay evidence, and 'the effects of symptoms,

17  including pain, that are reasonably attributed to a medically determinable impairment.'"  Robbins

18  v. Social Security Admin., 466 F.3d 880, 883 (9th Cir. 2006).

19       In this case, plaintiff argues that her sleep disturbances are a symptom of a medically

20  determinable impairment, namely, pelvic impairment with pelvic pain of unknown etiology.

21  Plaintiff argues that her sleep disturbances have been noted extensively in the record.  See, e.g.,

22  AR 110, 133, 370, 425-26.  At the hearing before ALJ Kwon, plaintiff testified that the pelvic

23  pain causes her to lose sleep, resulting in excessive sick calls.  AR 664, 686.

24       Sleep deprivation is, as plaintiff concedes, a derivative problem, the existence and severity

25  of which come into question once plaintiff's subjective complaints are found to be not fully

26  credible.  In other words, once the ALJ found plaintiff to be not entirely credible, the allegations

27  of pain-induced sleep, fatigue, and concentration problems also lost credibility.  As the ALJ

28  provided clear and convincing reasons to discount plaintiff's credibility, see supra, the ALJ was

1  not required to engage in a separate extended analysis of the sleep and fatigue problems.
2  Accordingly, the court finds no error on this ground.

3  E.      Remand is Required

4      The ALJ did not provide specific and legitimate reasons based on substantial evidence in
5  the record to discount the opinions of Drs. Gonzalez and Baldonado.  Generally, "[w]here the
6  Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or
7  examining physician, [the Court credits] that opinion as 'a matter of law.'" Lester, 81 F.3d at
8  830–34 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,
9  plaintiff's condition met a listing (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir.
10 1989))).  Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,
11 the evidence supports a finding of disability.  See Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir.
12 1996).

13     Courts retain flexibility, however, in applying this crediting-as-true theory.  Connett v.
14 Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there
15 were insufficient findings as to whether plaintiff's testimony should be credited as true).  "In
16 some cases, automatic reversal would bestow a benefits windfall upon an undeserving, able
17 claimant."  Barbato v. Comm'r of Soc. Sec. Admin., 923 F. Supp. 1273, 1278 (C.D. Cal. 1996)
18 (remanding for further proceedings where the ALJ made a good-faith error in that some of his
19 stated reasons for rejecting a physician's opinion were legally insufficient).

20     Here, the ALJ erred because the stated reason for rejecting the aforementioned opinions is
21 legally insufficient.  "Such good faith errors inevitably will occur.  Reasonable judicial minds
22 sometimes will disagree regarding proper application of the rather imprecise standard of 'specific,
23 legitimate' reasons." Barbato, 923 F. Supp. at 1278.  "[U]nder the rule in Lester, the [medical]
24 opinion will trigger benefits whenever the ALJ's previously stated reasons for rejecting the
25 opinion fall short of the ill-defined 'specific, legitimate' standard." Id. (footnote omitted).  "A
26 reviewing court should have discretion to avoid this inequitable result by remanding the case for
27 further administrative proceedings.  Remand necessitates delay, but the cost of this delay should
28 be balanced against the risk of an erroneous determination." Id.; see also McAllister v. Sullivan,

888 F.2d 599, 603 (9th Cir. 1989) (remanding for further proceedings because Secretary of Health and Human Services was in better position than court to point to evidence in record to provide specific, legitimate reasons to disregard treating physician's opinion).  Accordingly, the court exercises its discretion to remand this case to the Commissioner for further proceedings.  See McAllister, 888 F.2d at 603 (holding that court may remand to allow ALJ to provide the requisite specific and legitimate reasons for disregarding medical opinions).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is granted in part;
2. The Commissioner's cross-motion for summary judgment is denied; and
3. This matter is remanded for further proceedings consistent with this order.

DATED: January 16, 2014

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE